UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EMILY R. SEVIER,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>　　　　　　　　　Defendant. | Case No. 3:14-cv-05606-RBL<br><br>ORDER REVERSING AND<br>REMANDING DEFENDANT'S<br>DECISION TO DENY BENEFITS |

Plaintiff Sevier has brought this matter for judicial review of defendant's denial of her application for disability insurance and supplemental security income ("SSI") benefits. The defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on August 27, 2010, and an application for SSI benefits on March 30, 2012, alleging in both applications she became disabled beginning July 26, 2010. *See* Dkt. 13, Administrative Record ("AR") 21. Those applications were denied upon initial administrative review on December 6, 2010, and on reconsideration on February 25, 2011. *See id.* A hearing was held before an administrative law judge ("ALJ") on June 6, 2012, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. *See* AR 44-102.

ORDER - 1

In a decision dated November 30, 2012, the ALJ determined plaintiff to be not disabled. *See* AR 18-41. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on June 27, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1-6; 20 C.F.R. § 404.981, § 416.1481. On August 4, 2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 3. The administrative record was filed with the Court on October 8, 2014. *See* Dkt. 13. The parties have completed their briefing, and thus this matter is ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in failing to find plaintiff's panic disorder an impairment at step two; (4) in assessing plaintiff's residual functional capacity ("RFC"); and (5) in finding her to be capable of performing other jobs existing in significant numbers in the national economy. Furthermore, plaintiff argues that (6) additional evidence incorporated into the record by the Appeals Council undermines the ALJ's decision.

The Court agrees that the ALJ erred in evaluating the medical evidence on the record, and thus in assessing plaintiff's RFC and finding her capable of returning to past work or alternatively performing other work, and therefore in determining plaintiff to be not disabled. The Corut remands the matter for further administrative proceedings, as more fully explained below.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by

ORDER - 2

the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (*citing Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 3

I.    The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation

ORDER - 4

omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

Plaintiff asserts that the ALJ erred in improperly rejecting the medical opinion of examining physician Dr. Terilee Wingate, Ph.D. *See* Dkt. 18, pp. 9-10. Dr. Wingate performed a psychological evaluation on March 30, 2012. *See* AR 363-68. In her clinical summary, Dr. Wingate opined that plaintiff "would have difficulty attending to task throughout the daily and weekly work schedule. She is anxious if she has to interact with others or go into public places. She will not be able to interact with coworkers or the public." AR 365. Dr. Wingate rated plaintiff's prognosis as "poor," finding that she has "a serious medical condition that is not likely to improve." *Id*.

With respect to Dr. Wingate's medical opinion evidence, the ALJ found:

> I give some weight to Dr. Wingate's opinion. She had the opportunity to examine and test the claimant prior to opining on her ability to work. Her finding that the claimant should not be able to interact with the public is also consistent with the claimant's allegations and statements regarding her abilities. However, I limit the

ORDER - 5

> weight I give to Dr. Wingate's opinion because she fails to define how difficult it would be for the claimant to attend to task for a normal work schedule. It is unclear from her statement whether she believes the claimant's anxiety would be completely disabling or just an impediment the claimant could overcome. There is no objective medical evidence in the claimant's file to support the claimant's allegations that her anxiety is completely disabling. However, I do find there is sufficient evidence to limit the claimant's interaction with the public. I find no need to seek clarification on whether she could do a work schedule because based on the claimant's credibility I would reject such a limit as speculative. See credibility analysis.

AR 32.

In accepting part of Dr. Wingate's opinion and rejecting part, the ALJ's decision fails to address the opined limitation that plaintiff will not be able to interact with coworkers. The Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent*, 739 F.2d at 1395 (*quoting Cotter*, 642 F.2d at 706-07)). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571. Here, the ALJ accepts Dr. Wingate's limitation on public interaction and explains why he rejects the opinion that plaintiff would have difficulty attending to task for a normal work schedule. However, the ALJ neither explicitly rejects the limitation regarding interaction with coworkers nor gives reasons why the limitation is not incorporated into his assessment of plaintiff's RFC. *See* AR 25-26. Such an omission is in error. *See* SSR 96-8p, 1996 SSR LEXIS 5 at *20 (an RFC assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

Defendant argues that the ALJ made the "implicit decision to reject Dr. Wingate's opinion regarding coworkers in favor of other, more compelling evidence." *See* Dkt. 24, p. 13. Defendant asserts that the opinion was rejected by summarizing the conflicting evidence in detail and interpreting it. *See* Dkt. 24, p. 12. However, according to the Ninth Circuit, "[l]ong-standing

ORDER - 6

principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ— not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (*citing Chenery Corp., supra*, 332 U.S. at 196). The ALJ nowhere stated that he was deciding that more compelling evidence controverted Dr. Wingate's opinion regarding interaction with coworkers; he simply failed to address the issue.

Moreover, the ALJ did not adequately summarize the conflicting evidence in his decision and did not provide any reasoning for his interpretation and ultimate conclusion that plaintiff was not limited from interacting with coworkers. As the Defendant points out, the ALJ did mention that Dr. Rogelio Zaragoza, Ph.D., thought Seveir could interact with coworkers; however, the ALJ gave no weight to that opinion. *See* AR 32. As also noted by defendant, the ALJ mentioned that plaintiff had no more than moderate limitations in social functioning, as evidenced by her reports of having friends, getting along with authority figures, and going shopping in grocery stores. *See* AR 28-29. However, in listing these activities in the context of evaluating the credibility of plaintiff's statements, the ALJ does nothing to explain why he then gives weight to Dr. Wingate's opinion that plaintiff's interaction with the public should be limited but gives no weight to the opinion that her interaction with coworkers should be limited. Therefore, the ALJ did not provide the required specific and legitimate reasons for rejecting Dr. Wingate's opinion that plaintiff could not interact with coworkers.

ORDER - 7

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina*, 674 F.3d at 1115 (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

Had the ALJ fully credited the opinion of Dr. Wingate regarding plaintiff's ability to interact with coworkers, the RFC would have included additional limitations, as would the hypothetical questions posed to the vocational expert. As the ALJ's ultimate determination regarding disability was based on the testimony of the vocational expert on the basis of an improper hypothetical question, these errors affected the ultimate disability determination and are not harmless.

II.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify

the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's RFC assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ in this case assessed found that plaintiff had the RFC to perform:

> **light work as defined in 20 CFR 416.967(b) and 416.967(b) except she can frequently balance and crouch. She can perform all other postural activities occasionally. She can have no greater than frequent exposure extreme cold, extreme heat, excess humidity and hazards such as unprotected heights or hazardous machinery. She can have no exposure to industrial irritants such as fumes, dust, gases, or poorly ventilated areas. She should have no interaction with the public.**

AR 25-26 (emphasis in original). However, because as discussed above the ALJ erred in failing to address the opinion of Dr. Wingate, the ALJ's RFC assessment does not completely and accurately describe all of plaintiff's capabilities. Accordingly, here, too, the ALJ erred.

ORDER - 9

III.     The ALJ's Step Four Determination

The claimant has the burden at step four of the disability evaluation process to show that he or she is unable to return to his or her past relevant work. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

At the hearing, the ALJ posed hypothetical questions to the vocational expert containing substantially the same limitations as were included in the ALJ's RFC assessment. *See* AR 95-96. In response, the vocational expert testified that an individual with those limitations – and with the same age, education, and work experience as plaintiff – would be able to perform her past work as a polystyrene molding machine operator. *See* AR 96. Based on the testimony of the vocational expert, the ALJ found plaintiff capable of returning to past work. *See* AR 33. Again, however, because the ALJ erred in assessing the plaintiff's RFC, the hypothetical question did not completely and accurately describe all of plaintiff's capabilities. Therefore, the ALJ's step four determination is not supported by substantial evidence and is in error.

IV.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett*, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony

ORDER - 10

therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. *See* AR 95-96. In response to that question, the vocational expert testified that an individual with those limitations—and with the same age, education and work experience as plaintiff—would be able to perform other jobs. *See* AR 96. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. *See* AR 34-35. Again, however, because the ALJ erred in assessing the plaintiff's RFC, the hypothetical question did not completely and accurately describe all of plaintiff's capabilities. Therefore, the ALJ's step five determination is not supported by substantial evidence and is in error.

V.      This Matter is Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

ORDER - 11

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Here, issues still remain regarding plaintiff's functional capabilities and her ability to perform other jobs existing in significant numbers in the national economy. Accordingly, this case is remanded for further consideration.

## CONCLUSION

The ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with this opinion.

DATED this 1st day of June, 2015.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

ORDER - 12